## Carter v. Commonwealth.

October 21, 1949.

J. William Jordan and Walter B. Early for appellant.

A. E. Funk, Attorney General, H. D. Reed, Jr., Assistant Attorney General, and James Inman, Commonwealth's Attorney, for appellee.

JUDGE LATIMER—Affirming.

Appellant, Austin Carter, was convicted of the crime of forgery and uttering a forgery and his punishment fixed at five years confinement in the penitentiary. He appeals insisting: (1) The verdict of the jury is flagrantly against the evidence; (2) A forgery could not have been committed because neither the appellant nor the person on whose account the check was drawn could write; and (3) There was no evidence introduced to show that the First National Bank of Corbin was an authorized bank as alleged in the indictment.

The evidence discloses that Glennis Carter, a half brother of appellant, carried an account in the First National Bank of Corbin. A series of deposits commencing September 27, 1943 and running through April 16, 1946, had been made by Glennis Carter, who had never drawn on the account until sometime in 1947, at which time, in attempting to draw the entire amount deposited, he learned that his account had been drawn upon. Mrs. Irene Ott, Assistant Cashier of the bank, testified that Austin Carter, on March 7, 1946, came into the bank and informed her that he was Glennis Carter and requested to draw on his account. Mrs. Ott, knowing that Glennis Carter could not write, and believing

Austin Carter to be Glennis, complied with the request, wrote out a check in the amount of $320, witnessed the mark Austin Carter put on the check as the mark of Glennis Carter, and then paid Austin the $320.00.

Evidence further showed that Austin Carter had previously drawn on Glennis Carter's account in the sum of $100. At that time Mr. E. B. Calvert, an employee of the bank, believing him to be Glennis Carter, waited on Austin, witnessed the mark placed on the check and paid him the money. The jury was properly admonished by the court to consider the latter check only for the purpose of showing a plan or scheme if in the jury's opinion it did so do.

Glennis Carter said that he did not make the marks on either of the checks, nor had he authorized anyone so to do. The checks and Glennis Carter's bank book showing the deposits of Glennis Carter were filed as exhibits.

Appellant was identified by both Mrs. Ott and Mr. Calvert as the person requesting the check be drawn and making the mark as that of Glennis Carter. Appellant vigorously denied having requested the drawing of the check, the signing or cashing of same. He undertook to prove an alibi and was corroborated somewhat in this defense. It is readily observable from the above conflict of evidence that the matter was a question for the jury. It cannot be persuasively argued that the verdict was flagrantly against the evidence.

There is, likewise, no merit in appellant's contention that it was impossible for him to commit a forgery by checking on Glennis' account since neither he nor Glennis could write. We have held that forgery depends "not upon the skill with which the forgery is executed, but upon the character of the instrument forged. It must be a writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability; * *." See Davis v. Commonwealth, 217 Ky. 801, 290 S. W. 702, 704.

The request that the check be drawn, appellant's statement to the cashier that he was Glennis Carter, his instructions to her to sign the name of Glennis Carter on the check, and the signing of the mark as that of Glen-

nis Carter, clearly established the necessary element of an intent to deceive. We have said: "To authorize a conviction for forgery, it is not necessary to show that the accused signed the forged name or prepared the forged instrument himself; it is sufficient that he was present and caused the name to be signed or the instrument to be prepared." Robinson v. Commonwealth, 217 Ky. 129, 288 S. W. 1044. Consequently, we see there is no merit in appellant's second contention.

We find more difficulty with respect to ground (3). It appears that the indictment was obtained under KRS 434.130(2). It is contended that since the indictment was under Subsection (2) of the above statute it was not only necessary that the indictment charge, but it was equally necessary to prove that the bank upon which the check was drawn was authorized by the laws of the United States or a state of the United States or a foreign government. It is contended by appellant that there is entire failure to prove such authority, and that such failure is fatal to the Commonwealth's case. In support of this contention, Fain v. Commonwealth, 287 Ky. 507, 154 S. W. 2d 553, is cited. This case, parallel to the instant case, holds that where the indictment under KRS 434.130(2) alleges it, the instructions must require a finding by the jury that the bank upon which the alleged forged check was drawn, was an authorized bank. To the same effect are Commonwealth v. Lee, 37 S. W. 72, 18 Ky. Law Rep. 484; Commonwealth v. Miller, Ky., 115 S. W. 234; and Mason v. Commonwealth, 156 Ky. 493, 161 S. W. 229.

Appellee contends that the instant case is unlike the Fain case in that, here, evidence was placed before the jury from which it could logically determine that the bank was authorized under the laws of the United States.

We note from the evidence that Mrs. Ott had been an assistant cashier of the bank for about 20 years. It is also noted that appellant himself had done business with this bank and had made deposits therein. We note further that the checks of Glennis Carter were introduced into evidence, on the face of which appears the statement "Member Federal Reserve System." While this is not the best evidence, we find nowhere any ob-

jection on the part of appellant to the introduction of these checks, which when admitted speak for themselves.

In the recent case of McGlothen v. Commonwealth, 310 Ky. 48, 219 S. W. 2d 1003, 1005, reversal was urged on the ground that the Commonwealth failed to prove that the Time Finance Company was a corporation. It was held that in such cases the fact of incorporation may be shown by parol evidence. In disposing of that question, it was said:

"In Morse v. Commonwealth, 129 Ky. 294, 111 S. W. 714, 719, the court quoted with approval the following from Thompson on Corporations:

" 'In criminal prosecutions, when the question arises whether a company is incorporated, for instance, in a case of a prosecution for larceny of the property of an alleged corporation, or for a forgery of the bills of an alleged banking corporation, it is only necessary to show that the corporation exists de facto, and this may be proved by general reputation; in other words by proving by parol testimony that it is a corporation de facto, doing business as such.'

"To the same effect are Standard Oil Company v. Commonwealth, 122 Ky. 440, 91 S. W. 1128; Swann v. Commonwealth, 169 Ky. 565, 184 S. W. 868; Commonwealth v. Southern R. Co., 179 Ky. 402, 200 S. W. 653."

The instructions given by the court required the jury to find that the bank was authorized to do business and we believe that the uncontroverted evidence as introduced, though not the best character of evidence, was sufficient to justify the jury in finding the bank was so authorized.

The judgment is affirmed.